STATE OF NORTH CAROLINA v. JEFFREY BOWES, Defendant

No. COA02-323

(Filed 15 July 2003)

**1. Appeal and Error— mootness—likelihood of repeated action**

The issue of whether DMV could disregard a limited driving privilege granted by a court was not moot even though the original revocation and the limited privilege had expired by the time of the Court of Appeals decision. It is reasonably likely that DMV could repeat its action in considering future cases.

**2. Jurisdiction— subject matter—limited driving privilege issued by court—invalidated by DMV**

The trial court had subject matter jurisdiction to consider the DMV's invalidation of a limited driving privilege because the court that issues a judgment (the limited privilege) is the appropriate court in which to seek enforcement of the judgment, and because the General Assembly specifically designated the district court to determine both civil and criminal remedies in N.C.G.S. § 20-179.3.

**3. Motor Vehicles— invalidation of limited driving privilege— DMV—personal jurisdiction**

The district court had personal jurisdiction over the DMV in an action concerning DMV's invalidation of a court-issued limited driving privilege. The district attorney is in privity with DMV because this involves a single criminal proceeding and because N.C.G.S. § 20-179.3 implicitly places the district attorney in privity with DMV for purposes of limited driving proceedings.

**4. Immunity— sovereign—limited driving privilege—action to enforce against State**

The State's enactment of N.C.G.S. § 20-179.3 waived sovereign immunity for enforcement of a limited driving privilege granted by a court and invalidated by DMV.

**5. Constitutional Law; Motor Vehicles— separation of powers—due process—limited driving privilege—granted by court—invalidated by DMV**

DMV violated both due process and separation of powers by unilaterally invalidating a limited driving privilege which had

**STATE v. BOWES**

[159 N.C. App. 18 (2003)]

been granted as a judgment by a district court. The court was not notified and took no action to vacate its order.

Judge EAGLES dissenting.

Appeal by the State from judgment entered 10 December 2001 by Judge Charles M. Vincent in Pitt County District Court. Heard in the Court of Appeals 13 November 2002.

*Attorney General Roy Cooper, by Assistant Attorney General Jeffrey R. Edwards, for the State.*

*The Robinson Law Firm, by Leslie S. Robinson, and Law Offices of Keith A. Williams, P.A., by Keith A. Williams, for defendant-appellee.*

HUDSON, Judge.

The pertinent background of this appeal is as follows: On 3 August 2001, Jeffrey Bowes pled guilty to driving while impaired and was sentenced as a Level 5 offender. At the time of his plea, Bowes was nineteen years old. Judge Joseph A. Blick ordered Bowes placed on twelve months of unsupervised probation, to pay $290.00 in costs and fines, to obtain a substance abuse assessment, to surrender his driver's license, to complete 24 hours of community service, to submit to any test for the detection of alcohol or drugs requested by a law enforcement officer, and not to operate a motor vehicle until properly licensed to do so.

On 6 August 2001, Judge David A. Leech signed an order in the same file (00 CR 64316) granting Bowes a limited driving privilege. By letter of 13 August 2001, the Division of Motor Vehicles (DMV) notified Bowes that the DMV "considers the [limited driving] privilege void and our records will not indicate [that he] has a limited driving privilege." Bowes then filed a "Motion in the Cause for Contempt and for Injunctive Relief" in the DWI case seeking to have the court hold the DMV in criminal and/or civil contempt for refusing to honor the limited driving privilege and seeking to enjoin the DMV from denying him a limited driving privilege.

On 10 December 2001, District Court Judge Charles M. Vincent entered an Order in which he concluded that the DMV's actions in invalidating Bowes' limited driving privilege violated the separation of powers doctrine and also violated Bowes' constitutional rights to

STATE v. BOWES

[159 N.C. App. 18 (2003)]

due process and equal protection. The pertinent conclusions of law are as follows:

> 5. That G.S. 20-179.3(k) authorizing the Division of Motor Vehicles to reject and invalidate a Limited Driving Privilege Order issued by a District Court Judge without notice to the Defendant and an opportunity to be heard before the Judge, violates the separation of powers doctrine of the North Carolina Constitution by vesting judicial authority in an agency of the executive branch;

> 6. That the Division of Motor Vehicles has no authority to unilaterally reject a Criminal Judgment ordered and issued by a District Court Judge;

> 7. That the Division of Motor Vehicles without proper notification to the Court and by its inconsistent treatment of such privileges to other drivers similarly situated to the Defendant, has violated the Defendant's Federal and State Constitutional rights to equal protection of the law, and that there is no rational or reasonable basis for the Division's decision to treat the Defendant differently from other drivers who are similarly situated (that is, differently from other drivers who were also over eighteen years of age but under twenty-one years of age at the time they committed the offense of DWI);

> 8. That the Division of Motor Vehicles' actions in denying a privilege to the Defendant and invalidating the Court's Criminal Judgment has been arbitrary and capricious and is in violation of Defendant's procedural due process of law[.]

Judge Vincent further determined that the DMV was collaterally estopped from contesting or relitigating the issue because the DMV had failed to object to the court's ruling on 6 August 2001 that found that Bowes was eligible for a limited driving privilege, that the State has impliedly waived its sovereign immunity to a limited extent by the enactment of G.S. § 20-179.3, and that the DMV had the ability to comply with the orders entered by Judge Blick on 3 August 2001 and Judge Leech on 6 August 2001.

The State filed notice of appeal to this Court. Following a hearing, the district court dismissed the appeal, concluding that appeal should have been filed with the superior court within ten days of the order. The State filed a petition for writ of certiorari in this Court, which we allowed. Thus, the case is properly before us. For the following reasons discussed below, we affirm.

## Analysis

**[1]** Before discussing the State's argument, we first address a question of mootness on our own motion. Since Judge Vincent's 10 December 2001 Order was entered, the revocation of Bowes' license has run and his limited driving privilege has expired.

In general, "an appeal presenting a question which has become moot will be dismissed." *Matthews v. Dept. of Transportation*, 35 N.C. App. 768, 770, 242 S.E.2d 653, 654 (1978). This general rule is, however, subject to exception, and one such exception is that courts may review cases that are otherwise moot but that are "capable of repetition yet evading review." *In re Jackson*, 84 N.C. App. 167, 170-71, 352 S.E.2d 449, 452 (1987). "There are two elements required for the exception to apply: (1) the challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party would be subjected to the same action again." *Crumpler v. Thornburg*, 92 N.C. App. 719, 723, 375 S.E.2d 708, 711, *disc. review denied*, 324 N.C. 543, 380 S.E.2d 770 (1989) (citations omitted).

As we have noted, Bowes' limited driving privilege has expired and the revocation of his license has run since Judge Vincent's 10 December 2001 order. However, we believe it reasonably likely that the DMV, in considering future orders granting limited driving privileges, could repeat the action that is at issue here and face similar challenges. Consequently, we will proceed to consider the issues raised on this appeal.

### A. Subject Matter Jurisdiction

**[2]** The State first argues that the trial court lacked subject matter jurisdiction over the issues presented and lacked personal jurisdiction over the DMV. We disagree.

G.S. § 20-179.3(a) provides that "[a] limited driving privilege is a judgment issued in the discretion of a court for good cause shown." Subsection (d) provides that the application for a limited driving privilege may be made at or after the time of sentencing in the criminal matter to the judge presiding over the defendant's criminal trial or to the Chief District Court Judge, and no hearing may be held until a reasonable time after notice is given to the district attorney's office. Thus, we conclude that, as with other judgments, the appropriate court in which to seek enforcement of the judgment issuing the limited driving privilege is the court that issued the judgment.

Here, the district court granted Bowes a limited driving privilege on 6 August 2001. On 13 August 2001, the DMV sent Bowes the letter informing him that it considered the limited driving privilege void. Bowes then filed a motion in the cause for contempt and injunctive relief in the DWI case, in an attempt to have the court order the DMV to honor the limited driving privilege. The State argues that since Bowes sought both civil and criminal remedies, that Bowes' proper avenue to enforce the judgment was in a separate civil action. However, in G.S. § 20-179.3, the General Assembly has specifically designated the district court to determine both civil and criminal remedies. Thus, the district court was the appropriate forum to pursue these remedies, as well as the underlying judgment.

B. Personal Jurisdiction

[3] The State also argues that the district court lacked personal jurisdiction over the DMV and, thus, any order issued compelling the DMV to act is a nullity. We disagree.

In *Brower v. Killens*, this Court held that the district attorney and the DMV were in privity and as such the DMV was collaterally estopped from relitigating probable cause determinations made in a prior DWI case in which the district attorney was a party. 122 N.C. App. 685, 472 S.E.2d 33 (1996), *disc. review denied*, 345 N.C.625, 481 S.E.2d 86 (1997). Indeed, the *Brower* Court noted that "as DMV is also a servant of the people . . ., we conclude the district attorney and DMV actually represent the same interest in driving while impaired cases—that of the citizens of North Carolina in prohibiting individuals who drive under the influence of intoxicating substances from using their roads." *Id.* at 688, 472 S.E.2d at 35.

Although the *Brower* Court limited its holding to collateral attacks upon probable cause determinations, we find it easily distinguishable because the *Brower* decision was based upon the "fundamental difference between criminal prosecutions and civil license revocation proceedings." *Id.* at 690, 472 S.E.2d at 36. Here, we are faced not with two separate proceedings—one criminal and one civil—rather, we are faced with a single criminal proceeding. In addition, we note that section 20-179.3 mandates that the district attorney receive notice of the application for a limited driving privilege prior to a hearing on such. Since the DMV is the intended audience of a limited driving privilege, the statute implicitly places the district attorney in privity with the DMV for purposes of limited driving proceedings.

## C. Sovereign Immunity

**[4]** The State further contends that Bowes is barred by sovereign immunity from seeking to hold the DMV in contempt or from seeking injunctive relief against the DMV. We note that the doctrine of sovereign immunity does bar the Court from holding the DMV in contempt because the State has not waived immunity to that extent. *N.C. Dept. of Transportation v. Davenport*, 334 N.C. 428, 432 S.E.2d 303 (1993) (sovereign immunity bars the court from holding administrative agencies in contempt). However, the district court, having jurisdiction over the parties and the subject matter, could properly enter and enforce its judgment. *See Jones v. Brinson*, 238 N.C. 506, 509, 78 S.E.2d 334, 337 (1953) ("Jurisdiction is the power of a court to decide a case on its merits; it is the power of a court to inquire into the facts, to apply the law, and to enter and enforce judgment"). Sovereign immunity acts as a bar to suit against the State unless the State has given consent to be sued or the legislature has waived immunity. *Wood v. N.C. State Univ.*, 147 N.C. App. 336, 338, 556 S.E.2d 38, 40 (2001), *disc. review denied*, 355 N.C. 292, 561 S.E.2d 887 (2002). We agree with the trial court that, by enacting G.S. § 20-179.3, the State has given the court the authority to order the state agency (DMV) to issue a limited driving privilege. Thus, we conclude that the State has waived immunity for the purposes of enforcement of such order.

## D. Separation of Powers

**[5]** The State next argues that the trial court erred in determining that the statutory scheme through which the DMV invalidated Bowes' limited driving privilege violates the separation of powers doctrine, and, to the contrary, that the DMV, an agency of the executive branch, has the authority to disregard judgments entered by a court when the DMV believes that the judgments do not comply with the law.

G.S. § 20-179.3(e) provides that "[a] limited driving privilege issued under this section authorizes a person to drive if his license is revoked solely under G.S. 20-17(a)(2) . . .; if the person's license is revoked under any other statute, the limited driving privilege is invalid." Further, subsection (k) provides that "[i]f the limited driving privilege is invalid on its face, the Division must immediately notify the court and the holder of the privilege that it considers the privilege void and that the Division records will not indicate that the holder has a limited driving privilege." The DMV argues that since Bowes was under the age of 21 at the time he was convicted of driving while impaired, his license was revoked under both section 20-17(a)(2)

(impaired driving) and 20-13.2.(b) (impaired driving while under the age of 21). Thus, his license was not revoked "solely under G.S. 20-17(a)(2)," and therefore the limited driving privilege was invalid on its face. Although true, for the following reasons, we affirm the district court.

Article I, section 6 of the North Carolina Constitution is entitled "separation of powers" and provides that the "legislative, executive, and supreme judicial powers of the State government shall be forever separate and distinct from each other." Article IV, section 1 provides that the judicial power of the state shall be vested in the General Court of Justice, and that "[t]he General Assembly shall have no power to deprive the judicial department of any power or jurisdiction that rightfully pertains to it as a coordinate branch of the government." Further, in Article IV, section 3, the General Assembly has the authority to "vest in administrative agencies . . . such judicial powers as may be reasonably necessary as an incident to the accomplishment of the purposes for which the agencies were created. Appeals from administrative agencies shall be to the General Court of Justice."

G.S. § 20-179.3(a) specifically provides that "[a] limited driving privilege is a *judgment* issued in the discretion of a court for good cause shown." (emphasis added). This Court has previously held that:

a judgment of a Superior Court must be honored unless the judgment is void. Where a court has authority to hear and determine the questions in dispute and has control over the parties to the controversy, a judgment issued by the court is not void, even if contrary to law. Such a judgment is voidable, but not void *ab initio*, and is binding until vacated or corrected.

*Hamilton v. Freeman*, 147 N.C. App. 195, 204, 554 S.E.2d 856, 861 (2001), *disc. review denied*, 355 N.C. 285, 560 S.E.2d 802 (2002) (citations omitted).

G.S. § 20-179.3 specifically vests the district court with jurisdiction to issue limited driving privileges. Also, having previously held that the court had jurisdiction over the DMV in this matter, we hold that the judgment granting Bowes a limited driving privilege is not void, even if entered contrary to law. *See id.*

Though the North Carolina Constitution empowers the General Assembly to grant administrative agencies certain judicial powers, it may not do so in a way that violates the separation of powers doctrine. By enacting G.S. § 20-197.3, which allows the DMV to invalidate

a judgment of the court, the General Assembly has, in effect, given the DMV the power to reverse the district court. The North Carolina Constitution, specifically Article IV, section 3, does not permit an administrative agency of the executive branch to exercise appellate review of decisions of the General Court of Justice. To the contrary, it provides that appeals from administrative agencies shall be to the General Court of Justice. This vesting of what is essentially appellate power in the DMV, we believe, violates the separation of powers doctrine of our Constitution. Thus, we conclude that by allowing the DMV to, in essence, invalidate a properly entered court order, G.S. § 20-179.3(k) violates the provisions requiring separation of powers contained in Article I, section 6; Article IV, section 1; and Article IV, section 3 of the North Carolina Constitution.

We find strong support for our conclusion in *Hamilton*. There, plaintiffs were inmates under the control of the North Carolina Department of Corrections serving prison terms resulting from plea agreements. Plaintiff Hamilton was serving a fourteen-year sentence as a Committed Youth Offender ("CYO"). At the time, CYO's were eligible for parole consideration immediately upon entering DOC's custody. However, when Hamilton entered DOC's custody, DOC determined that Hamilton did not qualify for CYO status under our General Statutes and refused to consider her for immediate parole.

Similarly, plaintiffs Hayes and Huggins entered into plea agreements with the State, whereby the trial court sentenced them to concurrent terms of imprisonment. However, Hayes and Huggins were statutorily ineligible for concurrent sentences, and upon entering DOC's custody, DOC informed them that their sentences would run consecutively rather than concurrently. The trial court granted plaintiffs' declaratory relief, and the DOC appealed.

Addressing the issue of the propriety of DOC's actions, this court held that:

It is well established that a judgment of a Superior Court must be honored unless the judgment is void. Where a court has authority to hear and determine the questions in dispute and has control over the parties to the controversy, a judgment issued by the court is not void, even if contrary to law. Such a judgment is voidable, but not void *ab initio*, and is binding until vacated or corrected. Because the sentencing courts had authority over the disputes and control over the parties, the resulting judgments were not void and must be honored as received by DOC.

Furthermore, we note that "[t]he legislative, executive, and supreme judicial powers of the State government [are] . . . separate and distinct from each other." The Department of Correction is a part of the executive branch of North Carolina. By independently amending judgments to reflect compliance with DOC's interpretation of statutory authority, DOC has usurped the power of the judiciary, thereby violating separation of powers.

*Hamilton*, 147 N.C. App. at 204, 554 S.E.2d at 861 (citations omitted).

Here, Bowes was issued a limited driving privilege, in the form of a judgment, by the district court pursuant to G.S. § 179.3. Acting unilaterally under G.S. § 20-179.3(k), the DMV notified Bowes that the DMV determined that the limited driving privilege was invalid and that it considered the judgment void. Such an action, in which the DMV invalidates a court order, without the court itself taking any action to vacate or amend the order, thus violates the separation of powers clause of our Constitution.

In addition, we agree with the trial court that, by invalidating Bowes' limited driving privilege without returning to court, or even notifying the court in accordance with the statute and its usual procedure, the DMV has violated Bowes' rights to due process of law.

Affirmed.

Judge McGEE concurs.

Chief Judge EAGLES dissents.

EAGLES, Chief Judge, dissenting.

Because the doctrine of sovereign immunity bars all *in personam* contempt proceedings against the State and its administrative agencies; and because the action, as filed, was insufficient to give the district court either personal or subject matter jurisdiction, I respectfully dissent.

I begin by noting that I agree with the conclusion reached in section D of the majority opinion: To the extent that G.S. 20-179.3(k) permits the DMV to unilaterally invalidate a properly entered court order, it violates the separation of power provisions of the North Carolina Constitution. *See* N.C. Const. art. I, § 6. *Accord Hamilton v. Freeman*, 147 N.C. App. 195, 204, 554 S.E.2d 856, 861 (2001), *disc.*

*review denied sub nom., Hamilton v. Beck,* 355 N.C. 285, 560 S.E.2d 802 (2002); *Thomas v. N.C. Dept. of Human Resources,* 124 N.C. App. 698, 706-10, 478 S.E.2d 816, 821-23 (1996), *aff'd per curiam,* 346 N.C. 268, 485 S.E.2d 295 (1997). However, for the following reasons, I believe the district court was without authority to enter the order that is at issue in this case.

First, our "contempt statutes refer generally to persons. 'In common usage, the term 'person' does not include the sovereign and statutes employing the word are ordinarily construed to exclude it.' " *N.C. Dept. of Transportation v. Davenport,* 334 N.C. 428, 431-32, 432 S.E.2d 303, 305 (1993) (citations omitted). Accordingly, the doctrine of sovereign immunity bars the State and its administrative agencies, as entities, from being held in contempt. *Id.* at 430, 432 S.E.2d at 304. Sovereign immunity also bars the issuance of injunctions against the State and its administrative agencies, as entities, because "an injunction . . . use[s] the *in personam* contempt power of the court . . . ." *Orange County v. N.C. Dept. of Transportation,* 46 N.C. App. 350, 385, 265 S.E.2d 890, 912, *disc. review denied,* 301 N.C. 94, —— S.E.2d —— (1980).

Here, defendant sought to have "*DMV* . . . adjudged in willful criminal and/or civil contempt," and "[a] preliminary and permanent injunction issue[d] from the court restraining and enjoining *DMV* from denying the defendant a limited driving privilege . . . ." (Emphasis added.) Nowhere in his motion did defendant seek to have any individual officer of the DMV held in contempt or enjoined. Furthermore, the district court entered an order "enjoining the *Division of Motor Vehicles* from denying the Defendant a Limited Driving Privilege[.]" (Emphasis added.) Since all of the remedies prayed for and granted were directed toward the North Carolina Division of Motor Vehicles, as an entity, and not toward any individual public officer, I would hold that the doctrine of sovereign immunity barred the district court from granting the prayed for relief.

The majority reasons that by enacting G.S. 20-179.3 and giving the court the authority to order the DMV to issue a limited driving privilege, the State has by necessary implication waived its sovereign immunity for purposes of enforcing these orders. I disagree. The State and its governmental units can only be deprived of sovereign immunity by a " 'plain, unmistakable mandate' " of the lawmaking body. *Wood v. N.C. State University,* 147 N.C. App. 336, 338, 556 S.E.2d 38, 40 (2001) (citations omitted), *disc. review denied,* 355 N.C.

292, 561 S.E.2d 887 (2002). "[Sovereign immunity] should not and cannot be waived by indirection or by procedural rule." *Id.*

Our Supreme Court has concluded that there are no North Carolina statutes in existence "in which the sovereign State of North Carolina has consented to be subject to the contempt power of the court." *Davenport*, 334 N.C. at 431, 432 S.E.2d at 305. Nothing contained in G.S. 20-179.3 purports to alter this conclusion. Since sovereign immunity may not be waived indirectly, I would hold that it has not been waived here.

Second, while I agree with the majority insofar as it reasons that the district court must be able to enforce its own judgments, I do not agree that the mechanism chosen in this case was appropriate. "*Mandamus* is the proper remedy to compel public officials . . . to perform a purely ministerial duty imposed by law, where it is made to appear that the plaintiff, being without other adequate remedy, has a present, clear, legal right to the thing claimed and it is the duty of the respondents to render it to him." *Hamlet Hospital and Training School for Nurses, Inc. v. Joint Committee on Standardization*, 234 N.C. 673, 680, 68 S.E.2d 862, 867 (1952). Although the statutory authority for the special remedy of *mandamus* by civil action has been repealed, *see* G.S. 1-511 *et seq.*, "the remedy formerly provided by the *writ of mandamus* is still available . . . and the substantive grounds for granting the remedy as developed under our former practice still control." *Fleming v. Mann*, 23 N.C. App. 418, 420, 209 S.E.2d 366, 368 (1974) (citation omitted) (emphasis added). *See also* G.S. 4-1 (2001) (declaring all parts of common law not otherwise repealed or abrogated in full force and effect). Moreover, "in this State, where the court exercises both legal and equitable jurisdiction, in a suit against a public official or board there is no practical difference in the results to be obtained by the common-law remedy of *mandamus* and the equitable remedy of mandatory injunction." *Sutton v. Figgatt*, 280 N.C. 89, 92, 185 S.E.2d 97, 99 (1971) (emphasis added). However, "neither a *mandamus* nor an injunction is effective against the public office; rather, they both use the *in personam* contempt power of the court to coerce the individual public officer in the performance of a plain duty or to prevent the official from taking actions outside of his legal authority." *Orange County*, 46 N.C. App. at 384-85, 265 S.E.2d at 912 (citations omitted) (emphasis added).

Here, defendant did not seek relief against any individual public officer; rather, defendant sought a court order directing that the DMV,

as an entity, comply with the order granting him a limited driving privilege. Therefore, notwithstanding the sufficiency of the remaining factual allegations, *see Figgatt*, 280 N.C. at 92, 185 S.E.2d at 99 (where allegations sufficiently allege cause of action for *mandamus*, the court may treat it as a petition and grant the appropriate relief), defendant's motion fails as a matter of law to sufficiently invoke the district court's subject matter jurisdiction to grant either *mandamus* or a mandatory injunction.

Furthermore, "[d]ue service of process is necessary to subject a party to the jurisdiction of the court." *Southern Mills, Inc. v. Armstrong*, 223 N.C. 495, 496, 27 S.E.2d 281, 282 (1943). " 'Jurisdiction in case of actions *in personam* can only be acquired by personal service of process within the territorial jurisdiction of the court . . . and unless jurisdiction of the party can be acquired, the attempted procedure is a nullity . . . .' " *Id.* at 497, 27 S.E.2d at 282 (citation omitted).

It is well established that a court may obtain personal jurisdiction over a defendant only by the issuance of summons and service of process by one of the statutorily specified methods. Absent valid service of process, a court does not acquire personal jurisdiction over the defendant and the action must be dismissed.

*Glover v. Farmer*, 127 N.C. App. 488, 490, 490 S.E.2d 576, 577 (1997) (citations omitted), *disc. review denied*, 347 N.C. 575, 502 S.E.2d 590 (1998). *See* N.C.R. Civ. P. 4(j)(1).

Here, no complaint or petition was filed instituting the action. Likewise, no summons was issued and neither a complaint nor a summons were served on any DMV officer. While DMV, as an entity was given notice of the hearing and DMV's attorneys appeared on the agency's behalf, this was insufficient to establish personal jurisdiction over any individual DMV officer. Accordingly, I would hold that the district court lacked personal jurisdiction over the proper party defendants.

For all the foregoing reasons, I would hold that the decision of the trial court should be reversed.